IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOSHUA D. MCGRIFF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 21-021 (MN) |
| | ) |
| MARY QUINN, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Joshua D. McGriff – Pro Se Plaintiff.

Rosamaria Tassone-DiNardo, City of Wilmington Law Department, Wilmington, DE – Counsel for Defendants.

February 13, 2023
Wilmington, Delaware

**NOREIKA, U.S. District Judge:**

Plaintiff Joshua D. McGriff, an inmate at the James T. Vaughn Correctional Center filed this action pursuant to 42 U.S.C. § 1983. (D.I. 2). Plaintiff filed a Second Amended Complaint on August 10, 2021, and it is the operative pleading. (D.I. 18). He appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 5). Defendants move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (D.I. 32). Plaintiff moves for a preliminary injunction. (D.I. 35).

**I.    BACKGROUND**

    **A.    Second Amended Complaint**

The Second Amended Complaint alleges claims for false arrest, false imprisonment, illegal search and seizure, and "racial discrimination/profiling." (D.I. 18 at 6). Plaintiff states that on the morning of May 19, 2020, while waiting for a bus in downtown Wilmington, Defendants Wilmington Police Detective Mary Quinn, Officer Lawrence Matic, and Officer DeBonaventura pulled up, obtained his name, and arrested him after discovering that he was on probation, without reading him his *Miranda* rights. (*Id.* at 7).[1] Although the Second Amended Complaint states that Plaintiff was charged with crimes allegedly occurring that day, it did not identify the crimes he was charged with committing, or the alleged circumstances of the crimes.

Plaintiff alleges that Defendants Quinn, Matic, and DeBonaventura gave the "alleged victim" money from Plaintiff's pocket without testing it for DNA and without keeping it as evidence; failed to have the victim identify Plaintiff; failed to get surveillance videos from buses he rode that morning, a convenience store he visited and nearby businesses; and failed to get a warrant to search his coat. (*Id.*). He claims that Defendants Quinn, Matic and DeBonaventura

---

[1]     Plaintiff did not identify the arresting officers, but his other allegations indicate that some or all of them were Defendants Quinn, Matic and DeBonaventura.

failed to preserve evidence that was in "his favor" – specifically, the relevant surveillance video footage; the money from the victim, which could have been tested for DNA; and communications with the victim as to how he identified Plaintiff as the suspect. (*Id.* at 7-8).

Plaintiff alleges that Defendants the City of Wilmington ("the City") and the Wilmington Police Department ("WPD") failed to train their officers against presenting false information to a court to obtain probable cause with the intent of false arrest, false imprisonment and violation of due process, and further failed to train their officers on the procedures to preserve evidence and against "racial discrimination/profiling." (*Id.*). He additionally alleges that Defendants Lt. Paul Ciber ("Ciber") and the WPD Office of Professional Standards ("Office of Professional Standards") failed to investigate his claims or undertake an adequate investigation and committed mail fraud when Ciber sent him a letter that was intended to deceive him into believing that there was an investigation of his police misconduct claims. (*Id.* at 8).

Finally, Plaintiff allegesbroad conspiracy claims against Defendants. (*Id.*). For relief, he requestscompensatory and punitive damages. (*Id*. at 11).

### B. Screening

After screening the Second Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(b) and § 1915A(a), the Court dismissed nearly all of Plaintiff's claims – the conspiracy claims against all Defendants, the failure-to-train claims against Defendants the City and WPD, and the failure-to-investigate claims against Defendants Ciber and the Office of Professional Standards – as frivolous and for failure to state a claim, concluding that amendment was futile. (D.I. 22 at 5-6; D.I. 23 at 1). The Court allowed Plaintiff to proceed only on his claim against Defendants Quinn, Matic and DeBonaventura for failure to preserve evidence. (D.I. 22 at 6; D.I. 23 at 1).

### C. Defendants' Motion to Dismiss

In their brief in support of their motion to dismiss, Defendants Quinn, Matic and DeBonaventura read the Second Amended Complaint more broadly than the Court did in its screening Opinion and Order. (D.I. 33). Although the Court construed the failure-to-train claim as fully containing the claims related to false-arrest and construed the failure-to-investigate claims as alleged only against Ciber and Office of Professional Standards, the motion to dismiss viewed these claims as brought individually against Defendants Quinn, Matic and DeBonaventura. Thus, these Defendants construe the Second Amend Complaint, following screening, as containing not only the failure-to-preserve-evidence claim, which the Court allowed to proceed, but also live claims for racial profiling, illegal search and seizure, false arrest, false imprisonment, failure to investigate, and conspiracy. (*Id.* at 7). Defendants Quinn, Matic and DeBonaventura assert that Plaintiff was convicted in state court on November 18, 2021, of, as relevant, first-degree attempted rape and third-degree assault. On that basis, Defendants argue that several of Plaintiff's claims are barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994), absent a showing that his conviction has been invalidated.

After Plaintiff failed to file a response to the motion to dismiss in the time permitted to do so, the Court ordered him to file a response. (D.I. 34). To date, Plaintiff has not filed a response. He did, however, file a motion for a preliminary injunction and restraining order, raising evidentiary issues from his criminal proceedings and requesting that this Court order the state trial court to hold a "Franks Hearing," and then dismiss the indictment and release Plaintiff from prison. (D.I. 35).

### D. State Court Criminal Proceedings and Conviction

The Supreme Court of Delaware recently affirmed on direct appeal Plaintiff's judgment of conviction arising from the events that led to this lawsuit. *See McGriff v. State*, No. 180, 2022,

3

2023 WL 600118 (Del. Jan. 27, 2023). At trial, the following narrative was established based on surveillance video evidence and witness testimony. On May 19, 2020, Plaintiff grabbed a seventeen-year-old male in downtown Wilmington, pulled him behind a building, and assaulted him. *Id.* at *1. The victim gave Plaintiff $20.00 in an effort to end the assault, but Plaintiff persisted in the assault and attempted to rape the victim. *Id.* A private company's safety and security advisor who watched the attack unfold in real time on a surveillance video called 911. *Id.* The security advisor and a police officer arrived at the scene at approximately the same time and found Plaintiff, identified as the aggressor, on the ground with the victim, who was crying, had a bloody mouth, and had his pants pulled down to his knees. *Id.* at *1-2. Defendants DeBonaventura and Mattic arrived and arrested Plaintiff. *Id.* At trial, Plaintiff testified that he was not the man in the video and that he was arrested while waiting for a bus to go to work. *Id.* Plaintiff was ultimately convicted of first-degree attempted rape and third-degree assault. *Id.*

## II. LEGAL STANDARDS

Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Amended Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When presented with a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), district courts conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the Court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even

4

if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Fowler*, 578 F.3d at 210. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

In deciding a motion to dismiss, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "[J]udicial proceedings constitute public records and . . . courts may take judicial notice of another court's opinions." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

### III. DISCUSSION

To begin, the Court concludes that Plaintiff's conspiracy claim against Defendants Quinn, Matic and DeBonaventura is not live, having been dismissed in the Court's screening Opinion, (D.I. 15 at 5), and that Plaintiff's failure-to-investigate claim is not live, as it was not brought

5

against these three Defendants. The Court will, however, address Plaintiff's claims against these Defendants for illegal search and seizure, false arrest, false imprisonment, and "racial discrimination/profiling," in addition to the failure-to-preserve-evidence claim that survived screening.

When Plaintiff filed his August 10, 2021 Second Amended Complaint, he had not yet been convicted in state court. When this Court screened the Second Amended Complaint on March 4, 2022, Plaintiff had been convicted, but the Court was unaware of that fact. The Court now takes judicial notice of Plaintiff's November 18, 2021 conviction, as well as the January 27, 2023 Delaware Supreme Court opinion affirming the judgment of conviction and describing the state-court proceedings. *See McGriff v. State*, No. 180, 2022, 2023 WL 600118 (Del. Jan. 27, 2023).

The Supreme Court held in *Heck* that where success in a § 1983 action would necessarily imply the invalidity of a conviction or sentence, an individual's suit for damages or equitable relief is barred unless he can demonstrate that his conviction or sentence has been invalidated. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). The Supreme Court later clarified the *Heck* doctrine in *Wallace v. Kato*, 549 U.S. 384 (2007), explaining that claims such as false arrest and false imprisonment are not *Heck*-barred because "the *Heck* bar is applicable only when, at the time the § 1983 suit would normally accrue, there is an *existing* criminal conviction." *Dique v. N.J. State Police*, 603 F.3d 181, 187 (3d Cir. 2010) (emphasis original) (discussing *Wallace*). The *Wallace* Court explained that, because "false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process – when, for example, he is bound over by a magistrate or arraigned on charges," and, therefore, the accrual date for claims of false arrest or false imprisonment claims is when legal process is initiated. *See*

6

*Wallace*, 549 U.S. at 388-91. It follows then, that when a claim for false arrest or false imprisonment accrues, "there may not even have been an indictment," let alone an existing "criminal conviction that the cause of action would impugn." *Id.* at 393. The *Wallace* Court refused to countenance an extension of the *Heck* doctrine to barring "an action which would impugn *an anticipated future conviction* . . . until that conviction occurs and is set inside. *Id.* (emphasis original). In *Dique*, the Third Circuit, applied the logic of *Wallace* to selective-enforcement claims under the Fourteenth Amendment, holding that such claims also accrue when legal process is initiated. *See Dique*, 603 F.3d at 188.

With this framework in mind, the Court turns to Plaintiff's claims, first addressing the failure-to-preserve-evidence claim, which was permitted to proceed following screening. The Court construes this claim as a due-process violation under *Brady v. Maryland*, 373 U.S. 83 (1963). In *Gravely v. Speranza*, 408 F. Supp. 2d 185, 189-90 (D.N.J. 2006), the District of New Jersey so construed such a claim, concluding that it was thus *Heck*-barred, and the Third Circuit agreed on appeal, *see Gravely v. Speranza*, 219 F. App'x 213, 215 (3d Cir. 2007) (per curiam). Indeed, the Third Circuit regularly concludes that *Brady* claims are *Heck*-barred because their success on the merits would necessarily imply the invalidity of the conviction. *See, e.g.*, *Walsh v. Popp*, 726 F. App'x 110, 111 (3d Cir. 2018) (per curiam); *Brookins v. Bristol Twp. Police Dep't*, 642 F. App'x 80, 81 (3d Cir. 2016) (per curiam); *see also See Strickler v. Greene*, 527 U.S. 263, 281 (1999) ("[T]here is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."); *Johnson v. Dossey*, 515 F.3d 778, 781-82 (7th Cir. 2008) (holding that a *Brady* violation accrues upon termination of criminal proceedings in the § 1983 plaintiff's favor). Accordingly, in light of

7

Plaintiff's conviction, the failure-to-preserve-evidence claim will be dismissed as *Heck*-barred. *See Gravely*, 219 F. App'x, at 215.

The Court next addresses Plaintiff's claims for illegal search and seizure, false arrest and false imprisonment, which are all essentially the same Fourth Amendment claim, *see Wallace*, 594 U.S. at 388-89 (considering false arrest and false imprisonment as one claim), as well as his "racial discrimination/profiling," claim, which could be construed as supporting his Fourth Amendment claim or as a stand-alone selective-enforcement claim under the Fourteenth Amendment, *see Dique*, 603 F.3d at 186; *Gibson v. Superintendent of New Jersey Department of Law & Public Safety-Division of State Police*, 411 F.3d 427, 432-34, 440, 446 (3d Cir. 2005).[2] As explained above, these claims accrued when legal process was initiated against Plaintiff, and are therefore distinguishable from his *Brady* claim and other species of claims that are traditionally subject to the *Heck*-bar, which only accrue after a conviction is vacated. *See Wallace*, 549 U.S. at 388-91; *Dique*, 603 F.3d at 188.

The situation confronted by the Supreme Court in *Wallace* and the Third Circuit in *Dique* was one in which earlier accruing claims were not brought until after the Plaintiff's criminal conviction was vacated, and after the statute of limitations had run. *See Wallace*, 549 U.S. at 387; *Dique*, 603 F.3d at 183. The *Wallace* Court dashed the hopes of too-late-to-file litigants by rejecting a regime in which a conviction would toll the statute of limitations for Fourth Amendment claims, which would have provided a window for § 1983 plaintiffs for whom the period of time in between the initiation of legal process and the conviction was less than the statute of limitations to

---

[2] *Gibson* contains two opinions – one representing the unanimous opinion of the three-judge panel as to the Fourth Amendment claim, *see* 411 F.3d at 430 n.1, and a majority opinion of two of the three-judge panel as to the Fourteenth Amendment selective-enforcement claim, *see id.* at 446.

timely file suit after the conviction was vacated and the *Heck*-bar was lifted. *See Wallace*, 549 U.S. at 394-95. The *Wallace* Court, however, did note:

> If a plaintiff files a false-arrest claim *before* he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.

*Id.* at 393-94 (emphasis added) (citations omitted).

Although the present case was not stayed pending Plaintiff's criminal proceedings in state court, the Court concludes that it is a distinction without a difference. Therefore, in light of Plaintiff's conviction, it is now appropriate to consider whether his Fourth Amendment false-arrest claim or Fourteenth Amendment selective-enforcement claim would impugn his conviction and thus be barred by *Heck*.[3]

With regard to Plaintiff's selective-enforcement claim, the Third Circuit has provided clear guidance that success in litigating this claim would impugn the conviction. *See Dique*, 603 F.3d at 184 n.6. Accordingly, this claim is *Heck*-barred and will be dismissed. Turning to the Fourth

---

[3] The Court notes that at least one non-precedential Third Circuit case could arguably be read to suggest that earlier accruing claims may never be *Heck*-barred, even following a conviction. *See Podlucky v. Commissioner*, No. 21-2794, 2022 WL 1301391 (3d Cir. May 2, 2022). Such a rule, however, does not appear viable in light of quoted text from *Wallace* regarding stays for this very purpose. *See Wallace*, 549 U.S. at 393-94. Indeed, another non-precedential Third Circuit case relied on the same authorities as *Podlucky* to arguably hold that earlier accruing claims cannot be *Heck*-barred, but was subsequently modified to alter the relevant holding. *Compare Hall v. Nisbit*, No. 21-2139, 2022 WL 421804, at *2 (3d Cir. Feb. 11, 2022), *with Hall v. Nisbit*, No. 21-2139, 2022 WL 910339, at *2 (3d Cir. Mar. 29, 2022). *See also Hall v. Nisbet*, No. 19-4382, 2022 WL 17814625 (E.D. Pa. Dec. 20, 2022) (concluding on remand that the relevant claims were *Heck*-barred). The Court notes that this case was captioned *Hall v. Nisbet* in the district court and *Hall v. Nisbit* in the Third Circuit.

9

Amendment claim, the crux of Plaintiff's allegations is that he was illegally arrested while waiting for a bus and had nothing to do with the assault and attempted rape. It is quite clear that proving this claim would impugn his conviction. Indeed, successful litigation of this claim would completely contradict the Delaware Supreme Court's observations that Plaintiff failed to make a "'substantial preliminary showing' that the police knowingly or recklessly relied on a false statement to establish probable cause"; "ignore[d] that the police arrested him after they found him with [the victim], who was crying, bleeding from his mouth, and had his pants pulled down"; and mounted no compelling challenge to the "video footage of [Plaintiff's] attack and arrest." *See McGriff v. State*, No. 180, 2022, 2023 WL 600118, at *3 (Del. Jan. 27, 2023). For these reasons, Plaintiff's Fourth Amendment claim will also be dismissed as *Heck*-barred.

Finally, the Court notes that if Plaintiff successfully invalidates his conviction at a later date, he will likely be entitled to some period of tolling, thus allowing him to re-raise his claims in a timely § 1983 action. In *Wallace*, the Court explained that, had the plaintiff timely filed his Fourth Amendment claim, "and had his suit then be dismissed under *Heck*," a conclusion that the tolling did not apply following a reversal of his conviction would effectively mean that *Heck* "produce[s] immunity from § 1983 liability, a result surely not intended." [4] *Wallace*, 549 U.S. at 395 n.4; *see also In re Jones*, 670 F.3d 265, 268 (D.C. Cir. 2012) (noting that the *Wallace* Court "implied that, even if [the plaintiff's] [timely filed] claims had accrued before the district court dismissed them under *Heck*, the statutes of limitations should be tolled as long as the bar of *Heck* prevented [the plaintiff's] suit from going forward"). For this reason, Plaintiff's *Heck*-barred claims will all be dismissed without prejudice.

---

[4] The Plaintiff in *Wallace* had not, however, timely filed his suit, and therefore the Court did not "need to decide, had he done so, how much time he would have had to refile the suit once the *Heck* bar was removed." *Wallace*, 549 U.S. at 395 n.4.

10

## IV.  CONCLUSION

For the above reasons, the Court will grant Defendants' motion to dismiss (D.I. 32) and dismiss the remaining claims—the failure-to-preserve-evidence claim, the Fourth Amendment claim, and the Fourteenth Amendment selective-enforcement claim – without prejudice. Plaintiff's motion for a preliminary injunction and restraining order will be denied as moot.

An appropriate Order will be entered.